All right, our third case is United States v. Springer, and we would be happy to hear from Mr. Schultz. Thank you, Your Honor, and may it please the Court, Benjamin Schultz on behalf of the United States. As the government explained in its brief in this case, which was filed before Mr. Springer's latest offenses and violations, the District Court decision must be reversed and remanded because the District Court failed to account for substantial contrary evidence in the record. The need for a remand is only reinforced by Mr. Springer's latest actions, which further illustrate that he has difficulties with impulse control, difficulties following instructions and complying with supervision, and indeed that when he testified in this case that he would be able to comply with supervision, that that testimony was suspect. To what extent can we consider the New York Court's actions in this case today? Well, at the very least, Your Honor, it's something that the Court can take judicial notice of. These are official judicial records. But in addition, I think it just sort of is a backdrop that illustrates that there are fundamental problems with what the District Court did in this case and that Mr. Springer, among other things, is someone whose credibility is very much in question. And if the District Court were going to find him credible, it needed to more concretely analyze his credibility instead of just declaring that it found him credible. It also shows, I think to a large degree, that the District Court placed too much reliance on Mr. Springer's supervision, that just a mere two months after being released in this case, Mr. Springer went out and repeatedly violated his supervision. So he didn't wait very long before disobeying the rules. Does the re-incarceration in New York make the case moot? Your Honor, we have not at this time asked the Court to make that conclusion. As we explained in our 28J letter, the BOP intends to evaluate— How did we—I don't know what's going to happen 13 months from now. I mean, maybe the government at that point is going to seek his recommittal. In our 28J letter, we explained that the Bureau of Prisons expects to, in February, determine whether or not it's going to recertify Mr. Springer. If it does, at that point, perhaps we could revisit whether the case is moot. At this point in the proceedings, we are not— I mean, are we rendering an advisory opinion on this? Because we don't really know what the lay of the land is going to be 13 months from now. Well, perhaps, Your Honor, if the Court wishes to wait until there's a certification, the Court certainly would have the discretion to do that. We anticipate that the certification will be made next month, or at least the evaluation for the certification will be made next month. And indeed, BOP understands that this Court would obviously be interested in that and will try to take this process expeditiously. Do you want to go ahead with this case today? At this point, we are not asking the Court to dismiss it as moot. And I don't want to speak for opposing counsel, but it's our understanding that they would in any event oppose dismissal for mootness. So at the very least, we think in these circumstances it's prudent to go forward. Well, I mean, I've always—sometimes mootness circles around to the point where a case is both arguably moot and arguably unripe. Does this case also fail for lack of ripeness because really it's only going to be ripe for decision after the term of incarceration is served? Well, Your Honor, these certifications are typically done before the individual is released. But how can we decide the issue of serious difficulty refraining from future conduct when we don't—I mean, all of the expert witnesses in this case, their testimony was predicated on Mr. Springer's record of staying, quote, out of trouble for a period of years. Now we've got this information. Obviously, their expert opinion is no longer—how can we even weigh the—determine whether there was clear and convincing evidence in the case when we know that the absolute foundation for their opinion has at least arguably been affected? Your Honor, that's absolutely right. We do think that this is new evidence that is very much relevant to the question of Mr. Springer's future dangerousness, and it may even have broader relevance than that. And at the very least, I think that leads to one of two conclusions. Either if this case isn't moot, and it may be eventually, we're not— Could it be remanded to the district judge to take account of the new evidence? At the very least, we think that that is the case. But in any event, if this case— The record doesn't explain that clearly, but it's no more than approximately two months. The two-month period was from his date of release from prison to the date of finding him in violation, right? All that activity had to take place within 60 days. The petition for revocation was filed on December 14th, and it said that on five different occasions he had done these things, and since some of the things he had done was not residing in a given group home on certain nights, presumably, at the very least, we know the first violation was on December 9th, so that would have been within 60 days of his release. I mean, wouldn't it—I mean, why wouldn't we want the district court to weigh in on this? Because it's pretty significant. Your Honor, the government agrees wholeheartedly that this is significant evidence, and we very much think that this is evidence that should be before the district court. Whether the most appropriate way to do that is in this proceeding or whether it's in some future proceeding were he to be certified is something that I suppose is a more difficult question. At this point, given the state of where we are, we are not asking the court to dismiss it as moot, and we think that the appropriate remedy is a remand. You're not asking us to do that? We are not asking the court at this point. Would you oppose it? Your Honor, if the court concludes that it is moot, I don't know that we would oppose it. We would, of course, ask in that circumstance for a monsing wear vacator, which we believe we'd be entitled to if this court thought the case were moot. But you're asking us to remand. At this point, yes, Your Honor, we are asking the court— The offense in New York, did it involve a sexual offense? It did not. It involved his failure to abide by the conditions of his probation officer, which meant that what happened was his probation officer said that he had to reside at a particular group home, and he did not. So what you're saying is that because the trial judge made these determinations in light of what he heard in order for him to re-weigh this and to look at it, this is additional evidence he can consider in making his decision. At the very least, not only is it additional evidence that he can consider, but at the very least we think it's additional evidence that he should and we believe must consider if the case is appropriately remanded. And I just want to be clear that— But let me ask this question. Does this evidence of what comes out of this case, does it compel a result? Well, Your Honor, we believe that the district court's reasoning was already quite suspect for the reasons that we articulated in our brief. I think this additional evidence only further shows problems with the district court's reasoning. And one of the key things I think it goes to, in addition to Mr. Springer's failure to comply with supervision and going to the reliance that the district court placed on supervision, but I think it also goes to Mr. Springer's credibility because this is someone who testified, yes, I understand the consequences of violating my supervision and I'm going to abide by my conditions. And then very quickly thereafter, he didn't do that and he didn't do that on multiple occasions. So the district court, who had just wholeheartedly credited Mr. Springer's testimony, I think would very much need to consider that in addition to the other problems that we have identified in our brief for finding Mr. Springer credible. Would his conduct during the next 13 months have some bearing on any ultimate decision of release? Isn't that possible? It certainly could, Your Honor, absolutely. So I just wonder if at this stage, whether in some fashion or form, we'd be better advised to hold the case until the revocation sentence is complete. Your Honor, I don't think that there's necessarily a problem with holding the case temporarily. If the court wants to hold the case until BOP decides whether or not to have a new certification, that may well be a prudent course. And at that point— What are you asking us to do? I mean, you're being cagey about this stuff. I'm listening to some sort of two-step. What is the government asking? Your Honor, at this point, we are asking for a remand. And I don't mean to be coy. What I'm trying to suggest is we don't have a position at this point whether or not the case is moot. But we do think that the mootness determination could be informed, perhaps to a significant degree, by a future certification by the Bureau of Prisons. And if BOP certifies Mr. Springer, then that may well be a reason to address mootness at that point. What's going to happen on remand? I mean, the district judge is going to take account of the new evidence, and then what? Your Honor— It would actually have to be a retrial, wouldn't it? Because I'm sort of talking spontaneously here, but I can't picture that Mr. Springer's experts— Mr. Springer wouldn't say, well, my experts need to have the benefit of this. We just can't have the judge do what he thinks with this evidence. We have a right to funnel this through our experts. And then you're talking about reopening the testimony in the case, aren't you? Your Honor, we certainly believe that because this is important evidence, that something like what Your Honor is talking about is appropriate. And it may well be that perhaps the more appropriate venue for that would be in a new certification proceeding. But you've got a final order in this case, right? That's correct. I'm just wondering how we remand for a new trial. What vehicle is there to do that? Your Honor, if the case were remanded for the district court to account— certainly it's our position, just independent of the new evidence, that the case should be remanded for the reasons that we've identified. What vehicle we would use and what would we ask? Of course, one thing the court could do is it could agree with the position that we've taken in our brief, which is that the district court in this case failed to account for numerous pieces of substantial contrary evidence and that because its decision was not adequately reasoned, a remand is necessary. But even beyond that, if the court is asking what additional vehicle, I suppose the Court of Appeals and its supervisory powers would have the authority. And this is a case brought in, I suppose, in equity, not in law. So the court could presumably have some sort of equitable authority to remand. But if Your Honor is—and I see some skepticism from the panel— if Your Honor finds that skeptical, perhaps that is a reason why this court should wait until February when we believe the BOP will make a determination as to whether or not to certify Mr. Springer. And we hope at that point some of these procedural questions will get a little bit clearer. I'd be happy to address the underlying arguments that we made in our brief if the court is still interested. And I do want to take at least a bit of time to explain why the district court in this case failed to consider substantial contrary evidence and why we think that was clear error. Why don't you go ahead with that? Certainly, Your Honor. And the first place that that starts has to do with the district court's conclusion that Mr. Springer did not suffer from pedophilia. And we think where the court should have started and indeed needed to start was from the clear proposition that Mr. Springer suffered from pedophilia at least until 2000. That was clear by his own admission. And that was clear from his repeated sexual contact with prepubescence over a lengthy period of time. And that contact met the DSM's criteria for pedophilia. So given that Mr. Springer suffered from pedophilia at least until 2000, the only question was whether he continued to suffer from pedophilia at the time that the district court ruled. And in that regard, as we've explained in our brief, the district court failed to account for numerous important pieces of evidence, one of which was Mr. Springer's testimony, which he placed a great deal of reliance on, where Mr. Springer just said, I no longer have these urges and I matured past them in 2000. But Dr. Plodd gave an expert opinion, too, did he not? That this was just a transition element for him as he was growing up to be an adult? Your Honor, that's exactly the opinion that Dr. Plodd offered. And the court seemed to buy it, didn't it? Your Honor, the court did say that it credited Dr. Plodd's testimony. But one of the main problems with Dr. Plodd's testimony was that it seemed to be premised on the idea that Mr. Springer had never suffered from pedophilia. That was why he altered the alternate explanation that these earlier acts were not, in fact, symptomatic of someone who has sexual urges towards children. They were engaged in pedophilic behavior, right? Exactly, pedophilic behavior, but he said it was not pedophilia. And that's why he was able to offer the alternate conclusion that, you know, if this wasn't pedophilia, it was instead something else. It was him acting out based on his lack of sexual maturity. So because we think it's clear that Mr. Springer suffered from pedophilia, that we believe is sufficient reason to show why Dr. Plodd's analysis was internally inconsistent. And, indeed, Dr. Plodd needed to – What pedophilic acts do you suggest he committed since 2000? We are not saying that he committed pedophilic acts since 2000, but there was evidence of continued urges. And that, among other things, was Mr. Springer's testimony on the stand when asked, when you were last out in the community, did you have difficulty refraining from contact with young children? He said, yes, he had difficulty. And if this is someone who doesn't have sexual – I thought there was testimony that he spent four years in the community without incident. Without incident, correct. He did not – as far as the evidence shows, he did not offend. But that doesn't mean that he wasn't having these urges. And, indeed, if he – Well, I know, but, I mean, at a certain point in time, you get into a situation where you're punishing people for their thoughts. And that's – you know, that's – I mean, who knows who has what thoughts? I mean, that strikes me as a – it's a translation of thought into action that the statute seems to address as serious difficulty in refraining from sexually violent conduct or child molestation. Your Honor, I see my time is up, but would the Court – Well, I'm asking you, are we getting into the terrain of punishing people for their thoughts? Your Honor, we are not taking that position. And, indeed – Well, that's what you kind of said. You said, well, he hasn't done anything, but he's thinking in the wrong way. Well, respectfully, Your Honor, I was addressing what we call the second prong, whether or not he suffers from a serious mental condition. And we believe the thoughts and urges are evidence of that serious mental condition. There would, in addition, be – But it has to cause serious difficulty in refraining from violent conduct or child molestation. Correct, Your Honor. And that gets to the third prong. You know, he was – it said he spent four years in the community without incident. Your Honor, there is not evidence that within the last four years he committed further acts of child molestation. But the question is not did he or didn't he in the last four years. The question is, as a result of his mental condition, would he have serious difficulty? And among the other pieces of evidence, we heard testimony that not just that Mr. Springer suffers from pedophilia, but that he also suffers from various serious personality disorders, which cause him great problems with impulse control. What? With impulse control, and that interacts with his pedophilia to give him difficulty. And indeed, just the language of the statute, if we could abstract it for a moment, the statute isn't saying that you can only be committed if you have committed these offenses in the last X number of years. The question under the statute is whether you would have serious difficulty. Now, it may be that a person has managed, despite the serious difficulty for a short period of time, to successfully avoid re-offense. But that doesn't mean that he's not going to have serious difficulty in the future. And indeed, as we've explained in our brief, and as the government's experts further explained, there are a lot of reasons in this case to think that going forward Mr. Springer would continue to have serious difficulty. And there is – You've got a heightened proof burden. You have to prove this by clear and convincing evidence. Your Honor, we don't shy from that. And we can easily – It's pretty much a battle of the experts and – Your Honor, we're not here – One way to study the other. Your Honor, we're not here to tell the court that it would have been impossible on this record for the district court to reach the conclusion that it did. But what we are here to tell the court is that there was substantial evidence in the record that the district court ignored. And that substantial evidence called into question, very much questioned, a lot of Dr. Plodd's testimony, and a lot of the evidence that the district court relied on. All right. Thank you, sir. You've had some time for rebuttal. Mr. Brignac, we'd be pleased to hear from you. Thank you, Your Honor. May it please the court, he's right. It's the statute. And the statute tells us to look at two places in time. Whether Mr. Springer currently, at the time of the hearing, has a mental illness, and whether Mr. Springer in the future will commit sexually violent acts and child molestation. The government's entire case was based in the district court on the past. On these horrific acts that Mr. Springer committed. Those acts in the past are certainly relevant evidence. Evidence that the district court considered. Just as it considered the expert opinions, just as it considered the DSM. But it adopted Dr. Plodd's opinion, which put Mr. Springer's past in a larger, more nuanced context. He was not simply checking the boxes of the DSM. He was looking and saying in the context of his life, what caused these pedophilic acts? Look at the age he was when he committed these acts. Look at the fact that he started with this seven-year-old, this young child, but his actual interests were in post-pubescent individuals. The district court considered that. The district court adopted Dr. Plodd's opinion. Well, why isn't the revocation sentence significant evidence with respect to whether the government has satisfied its burden under the statutory standard? First, the district judge, Your Honor, made two separate findings. And I don't think the government would allege, you know, if this court agrees that the government cannot prove clear error with respect to the finding that it did not meet by clear and convincing evidence pedophilia, revocation conduct has nothing to do with it. So what are you urging? Your Honor, I... You're urging an affirmance, aren't you? I am urging an affirmance. I am urging finality. I am urging... But why? I mean, it would sort of be a head in the sand, affirmance, because, you know, there is significant evidence that may well bear on the statutory standard because the violations of the conditions of supervised release, some of them, there weren't any additional crimes committed. They were what I would call mild violations to moderate violations. But why shouldn't the district court just be able to take those into account and to take into account whatever progress Mr. Springer would make during the 13 months? I mean, I don't understand what is harmed by waiting until all the information comes in after the next 13 months, understanding then at that point whether the government's going to seek to recommit him. Just have the district court hold this thing in abeyance until the conclusion of the revocation sentence because nobody's rights are going to be affected in the meantime if he is incarcerated. And the district court would get a good deal of relevant information at the appropriate time. I mean, you want finality, but the point is we're dealing with something that isn't final. We're dealing with an ongoing course of conduct. Your Honor, respectfully, there is a big difference between someone who is incarcerated under a criminal sentence, someone who is certified and waiting for their hearing, waiting in the queue in the Eastern District of North Carolina, and someone who's actually committed. If this court were to remand on the merits of the government's argument, say, and agree that the district court committed clear error, and the district... We wouldn't have to remand on the merits of the government's argument. We wouldn't have to say that the district court created clear error. It would just be the fact that what we're dealing with is a predictive evaluation. The whole statute, as you pointed out, asks us to look to the future. But then, quite candidly, you said, well, past conduct is relevant to the future. So we wouldn't have to say that the district court committed clear error. We wouldn't have to go anywhere near that far. What is wrong with holding a case in advance until the information, relevant information, comes in? Because, Your Honor, the relevant information, the government presented its case. This case was closed. The district court issued an opinion. That opinion has important collateral estoppel consequences. Let's say this court were to affirm. At that point, we would have a determination made, a judicially binding determination, that say at the date of the hearing, Mr. Springer did not suffer from a serious mental illness. Now, in 13 months, based on this revocation conduct, based on whatever he does or doesn't do, does the government choose to recertify? It may, it may not. If it does, that second certification will be based, in part, on the findings made in this certification. There wouldn't be a finding made that he has or doesn't have serious difficulty. The finding that we would make if your case were, if the district court would be affirmed, would be that the government failed to meet its proof burden, that there was not, the government failed to meet a clear and convincing burden of proof. So there would be nothing established as a matter of fact on which you could rely for the next hearing, would there? Your Honor, the district court would have found that the government did not meet, under the relevant standard, that, and I'm talking only about the second prong, because I agree the third prong about a future prediction can change at any point. But at that point, Mr. Springer would not, there would be a finding that the government didn't prove he was suffering from a mental illness. And, you know, could a mental illness develop? That would preclude the government from arguing that again. That would preclude the government, in our view, from arguing that he had, as it's trying to argue and it argued here, an ongoing pedophilia that started when he was a teenager and continues to this day. The government could certainly argue in a second hearing that he has hebephilia, and hebephilia is a serious mental illness. It could argue that the personality disorder should qualify as a serious mental illness. It could make those arguments. What it could not do is make the argument that the party spent a lot of time and money litigating, and the district court very carefully considered, which was whether Mr. Springer had this ongoing pedophilia from the time he was a teenager, and according to the DSM, it must be chronic. The district court has every right, regardless of, you know, if we just remanded the case, the district court has every right in any future hearing to rely on its previous findings if they were not vacated. The district court's findings would, in a simple remand order, would not impeach the district court's findings in a future hearing? No. The district court could say, you know, I'm relying on everything that I've decided heretofore. Yes. The district court may, if this court were to remand, rely on its previous findings. Sure. If this court affirms, and it's a final judicial determination, this district judge or any district judge, if the government recertifies, there's, you know, no chance, I mean, it may or may not end up in front of the same district judge, would actually be collaterally estopped, res judicata. There would be findings that that judge would be bound by. You know, that would be true if you say collaterally estopped, but we're not here on a collateral attack. I mean, we're here on a direct appeal, and there's a whole lot of difference in the procedural posture of a direct appeal and a collateral attack. Because the Supreme Court, if intervening case law or circumstances comes up in the course of a direct appeal, they'll remand it until, you know, your position would have so much more, would be so much more persuasive if this were, if the government were trying to attack this collaterally or something of that nature. But on direct appeal, we don't, you know, ascribe finality to something that is in medias res. We don't do that on direct appeal. We don't, you know, I mean, your whole thing about collateral estoppage, this isn't collateral. Right, and I apologize, Your Honor. I was talking about the difference between this court holding the case in long-term abeyance versus, you know, having this judicial determination be final. I would say, Your Honors, in terms of, you know, you pointed out that this was no criminal conduct. Mr. Springer started an adult relationship with someone who was a felon in violation. Associating with a sex offender, though, regularly. An individual that he met, you know, some of the only individuals he's actually able to meet. And he was told not to associate with sex offenders, right? He was in violation of associating with a felon, and he spent the night at his mom's house and not in the shelter. Those were both, neither were criminal conduct, but both in violation, Your Honor. Right, but associating with another sex offender is germane, isn't it? Your Honor, he started, there's no indication, Your Honor, that this had anything to do with grooming behavior, sex under networking. I mean, again, look at Frederick Springer. He hasn't done this in over a decade. What he started was an adult sexual relationship with another individual, an individual he met in group therapy. The only people he's meeting in his... So he knew he was a sex offender then, when he started the relationship, if he met him in group therapy. I do not know, Your Honor, but certainly, if you meet someone in sex offender group therapy, there's probably a fair assumption. But, you know, one thing I'll say, this conduct. If this court were to agree with the district court on prong two, and I actually think prong three, leaving this revocation conduct aside, is actually an even stronger case. But if this court agrees that the district court correctly found that Mr. Springer was not a pedophile, this revocation conduct has nothing to do with that. And there would actually be no reason to remand and to hold this case in abeyance. And speaking frankly, perhaps I'm a bit personally sensitive. Coming from the Eastern District, we've had these 48 cases. The word abeyance, these cases were held in long-term abeyance, pending Comstock and the like, and there's... I have a sense where the government presented its case. We presented our case. The judge made a determination that this person did not meet the criteria for commitment. And yes, there was subsequent non-criminal, non-sexual conduct, but that's not yet another reason to give us another 13-month abeyance, another black hole, another situation where somebody's sitting there not sure about their legal status. If the district court did not clearly err, please affirm the district court. And what happens in 13 months is what happens in 13 months. But that's not the... You know, the whole... A direct appeal takes account of events that transpire between trial and appeal. That's basic. And there are many, many cases that become moot on appeal. We learn jurisdictional facts pending appeal that render them non-justiciable. We learn new information that requires a remand. But what you're trying to do is saying that we shouldn't or can't take into account events that occur in the interval between a hearing and an appeal. But courts do that all the time. They do it. Many, many cases are live controversies at trial, and then additional facts come up during the pendency of the appeal, and they're mooted. And what you're trying to do is sort of slam the door to an appellate court's consideration of events and evidence and things that may come to light between the pendency of a... between the conclusion of trial and the disposition of an appeal. And I don't understand that. And, Your Honor, I am not slamming the door, nor am I saying that this court cannot take notice of facts or subsequent legal developments. What I'm asking is for this court, in its discretion, to look at this fact, this revocation, this non-criminal, non-sexual revocation, and say, looking at this fact... I mean, Judge Keenan's question pointed out, isn't it relevant that he's associating with... on some sort of basis with another sex offender? Your Honor... But he's done so in the past. I mean, in the past, he has failed to comply with sex offender restrictions. So it seems to me that it really has a double effect, not just that he did it in this instance, but that it suggests a pattern of behavior because he's done it before. Your Honor, we submit that this has nothing to do, again, with the second prong. Arguably, this conduct, and we would certainly say this wouldn't change the district court opinion, but, yeah, respectfully, when we're talking about volitional control, someone's ability to follow directions or not follow directions can be a relevant fact. But respectfully, Your Honor, though this is conduct he got revoked for, conduct he shouldn't have done, it doesn't get to the question as to his actual attraction to prepubescent children. It doesn't get... I mean, you know, when this case... when you have a case like this from our office, you know, when you have facts where not just that, you know, somebody was out in the community for six months and didn't get caught or something, you know, here's a situation where the government expert who looked at all the relevant evidence, including the 2004 non-confronted statement the government's talked about, who's looked at all of that evidence and said, no, no indication of a pedophilic thought or act. You know, Mr. Springer is not... he's not a pedophile. What about that 2004 statement? That's the one that just leaps off the page for me. Yes, and... The one that says he'd only abuse children if they really, really wanted him to? Mr. Springer, Your Honor, does not deny, we do not deny, no one's denied that he has a sexual attraction to post-pubescent individuals under 18. Well, he didn't say I'll only abuse post-pubescent children. He said that he would only abuse children if they really, really wanted him to. That, first... That's pretty scary, isn't it? Well, it was certainly not scary enough and important enough to the government to mention it in its proposed findings of fact. Right, but it's right there in the record, and he did not object on hearsay or confrontation grounds. And, Your Honor, experts are allowed to rely on hearsay. And the PSR was a document that certainly was an admissible document. Just because admissible documents and because experts, you know, contain hearsay and just because experts rely in part on hearsay doesn't mean you object to the admission of their testimony. Why isn't that evidence of pedophilia? Because, Your Honor... If they wanted it. Three reasons. First, it wasn't evidence. It wasn't presented to the district court. There was no opportunity for us. If it was so important, they could have presented it. It is in the record before us, is it not? No, I do not think so. Not in... Not in the probation report? I thought it was. Your Honor, an allegation in a PSR is not substantive evidence in itself. To get to the other points, Dr. Hastings reviewed it. None of us have seen this. Dr. Hastings saw it. Dr. Hastings saw the word children in context, which can certainly mean anyone under 18. Dr. Hastings, who saw this, who had his professional reputation on the line stating that Mr. Springer was a pedophile, you can look in his report. He saw this, and he said, I see no indication of any pedophilic thoughts or acts. If this 2004 allegation was something that actually could jump off the page and really did get to pedophilic behavior as opposed to attraction to teenagers, you know, the government would have presented it, it would have put it in its proposed findings of fact, and Dr. Hastings, when Mr. Craven cross-examined him, would have said, yes, yes, there's pedophilic thoughts he has. He would have said, yes, you know what, this 2004 report that I read where he was talking about prepubescent children. He didn't say that. You know, this is a case where the government carefully went through the record and found, again, what I would say wasn't actual evidence and, you know, pulled that out and on appeal spins it to make it look like something that it's not. But we're not even arguing here about whether it's admissible. We're arguing about whether the district court committed reversible error through not mentioning, you know, by the way, that one-sentence allegation in the PSR doesn't change the overall thrust of my opinion. Are we able to affirm this case on the basis of mental illness, that prong alone? Yes, Your Honor, this court could... And if we did that, would we... I guess the point I think you seem to be making is that you do not get into the... Volitional control. Your Honors can affirm on either or both prongs. And in the Caporelli case, this court indicated that for judicial efficiency, it should, you know, if it can affirm on one prong, that's enough for an affirmance. And you want to encourage district court. ...on the mental illness prong ends the case at this point, allow that other case to then proceed on... Yes. ...to be dealt with in a manner to deal with those issues of volitional control if necessary. Right, exactly. You know, Your Honor, this case would end... Now, let me ask something, because I was looking at the district court judge's opinion, and he talked on the last page about the supervised release. And I understand this doesn't deal with the mental illness. This is a second prong, because even if he did give the credit to the government's witnesses, this is where he would go with it, which deals with the volitional control. But he says that that evidence does not directly affect the court's consideration of Mr. Springer's own volitional control. What does he mean by that, the evidence of the supervised release terms? And, Your Honor, I will answer. I think the district court was looking very carefully at the statute. The statute asked if this individual would have serious difficulty from refraining, child molestation, if released. So the statute, that third prong, is sort of a two-step inquiry. We first look at this volitional control. This comes from Kansas v. Crane. That's what Congress intended when it wrote the statute. District court made that determination and said he does not, the government has not proven by clear and convincing evidence. Okay, but the statute also says to look at what happens if he's released. So I am, as a district court, allowed, I am arguably obligated, to look at the situation into which he's going to be released. And that buttresses my opinion. And in fact, I would argue in this case, the supervised release had the desired effect. He was caught before he committed, not that we would argue he would commit, and I think based on this record, we'd say he probably would not commit, but he didn't commit any criminal conduct. He was on a short leash on supervised release, and before he committed crime one, before he jaywalked, they got him. All right, thank you. Yes. If Judge Wynn has another question. No, thank you, Your Honor. Mr. Schultz? Mr. Schultz, how do you deal with Mr. Springer's argument that volitional control doesn't really matter if they failed to prove that he's a pedophile? And that the evidence is an equipoise on whether he's a pedophile. Your Honor, we don't dispute that if this court were to conclude, assuming the court doesn't remand, that if the court were to affirm the district court's conclusion that Mr. Springer doesn't suffer from pedophilia, that that would be sufficient to affirm the judgment. However, I want to make clear, first of all, we think that the new evidence, in addition to going to the last prong about volitional control, also does bear on the pedophilia. And one of the main reasons for that is because if you look at what the district court was doing when it concluded that Mr. Springer doesn't suffer from pedophilia, it was, among other things, crediting Mr. Springer's testimony where he said, oh, yes, I've matured past my previous urges. Let me make sure I understand what you're saying. Is Mr. Springer's revocation conduct relevant to determining whether he has a mental illness? We believe it is because it bears on his credibility. And if I could just walk the court through that. Mr. Springer testified in this case that he understood his conditions of supervision and that he would abide by them. His credibility insofar as what he told the doctors or the experts? He testified in this case that he would abide by his conditions of supervision. That, we know now, was not true, and he didn't abide by them. And how does that impact the determination of whether he has a mental illness? Certainly, what we think it directly impacts is Mr. Springer's credibility. It's one more piece of evidence in addition to the numerous pieces of evidence that we discussed in our brief, and I'd be happy to walk the court through them. But it's one additional piece of evidence. Other than credibility, how does it relate to the first prong of the statute? Other than credibility, I don't think it directly relates. And so in that regard, we would agree that perhaps it's more... Where does that come from, the credibility connection? Where does that come from? Is that a case law determination or that... That revocation has to do with credibility, which has an impact on... No, Your Honor, the key is that in this particular case, one of the key things that the district court relied on in concluding that Mr. Springer doesn't suffer from pedophilia is Mr. Springer's testimony when he said, I no longer have these sexual urges. I don't have sexual urges towards prepubescence. And the district court, as we explained in our brief, just said that as a credibility finding without addressing in any way the numerous problems with Mr. Springer's credibility such as his admitted... What did this revocation hearing show? His credibility on the sexual urges? It shows that... It further shows that Mr. Springer is someone who testifies falsely in court, and that's because he testified during this case that he understood his conditions and would abide by them. It didn't have to be this offense. It could have been anything he did. He could have... That's certainly true. If he had violated... And you'd say that's enough to remand because that shows his credibility. He said he wouldn't get out there and jaywalk. Your Honor, perhaps if that were the only thing that we had that showed that Mr. Springer's... Add four or five jaywalks to it. Your Honor, perhaps if that were the only thing that we had that would show that Mr. Springer's credibility is in question, maybe that wouldn't in and of itself be enough, but... He stayed at his mother's house, and he associated with a known sex offender, I guess? Yes. And we don't know what that association is, but do we? The probation violation said that he had met another man in sex offender treatment and that they began a relationship. And so on repeated occasions, he spent time with this other individual. They had a relationship is what... That's what the violation report says, yes. But if I could be clear, Your Honor, we're not just saying that one little piece of evidence is what shows the district court's problem. If you look back to our brief, what we are saying is that this is an individual who, one, testified on the stand that he lies under oath when it serves his interests. This is an individual who boasted to the experts about how he had committed fraud on 30 to 40 different occasions, and he enjoys and, indeed, he gets a thrill out of committing fraud. How does that go to whether he's a pedophilia? It goes to his credibility and the district court's decision to credit without any hesitation whatsoever or even begin to consider... He's not interested in prepubescent children. Respectfully, Your Honor, when the district court says, I credit Mr. Springer's testimony that he has matured past his past offenses, it's our position that in a case like this, a district court has to at least consider the very substantial evidence in this case showing that Mr. Springer was not a credible witness. We're not saying it could not have credited him, but we are saying it needed to account for that other evidence, like Mr. Springer's admitted willingness to lie under oath when it serves his interests and his long history of mendacity and fraud, which we outline in our brief. One additional... The danger is what... I mean, the district court would give deference in terms of him making credibility determination. He's made that determination, the individual's in front of him, and then something comes up in the future, and the question becomes, what you are now asking us to do, the level of evidence that's here is enough to overcome the deference of the district court's determination of credibility. And I'm... I guess I'm troubled as to where that can lead. I mean, beyond this case. Your Honor, I see my time is up, but I'd very much like to answer that question. But in other cases... Your Honor, we are not here saying that the district court could not have found Mr. Springer credible. That is not our position. What our position is is that if the district court... ...newly discovered evidence... Respectfully, Your Honor, I... ...bring in a motion with newly discovered evidence, then you want to bring it back in to the process. The district court, you haven't said he's found anything wrong with what he's done at the hearing itself in terms of his credibility. Now you've got this other evidence, and then you take it in an indirect way. You don't have the direct sexual conduct, nothing that speaks to the illness itself. So then you use the evidentiary basis of credibility to say, now that... ...which the district court so heavily relied upon. Your Honor, I apologize if I've confused the court... Isn't that a little dangerous, you think, in terms of where this could go? Your Honor, I apologize if I've confused the court, but let me make very clear what our position is. We are not saying that the violation in and of itself, ignoring everything else in this case, would in and of itself be a grounds to remand on the pedophilia problem. That is not our position. What our position is is that there are numerous, very substantial pieces of evidence in the district court record that the district court should have considered because they bared on Mr. Springer's credibility. The district court did not consider those very substantial pieces of evidence. Well, that goes without review, without regard to the other... It does, but... ...and I understand that aspect of it, but we give deference to the district court judge on that. And, of course, we can go, as you say, if he didn't just totally ignore it, that may be some basis for it. But if it's a credibility determination, it's a very high burden for the government to deal with for a district court judge in a position... He sees this witness, he knows what's going on out there, and it's difficult for us now to go back and say, judge, you just really, really missed this credibility thing. This man here, you got all of this stuff... Respectfully, Your Honor, what this court has already explained in the Wooden case, and, indeed, as the Supreme Court explained in Anderson v. Bessemer City, there's no doubt that a district court gets deference on its credibility findings, but that doesn't make the credibility findings completely insulated from review. And one basis that an appellate court has... I think we understand your point. Thank you. Thank you. Thank you. All right, we come down and shake hands.
judges: J. Harvie Wilkinson III, Barbara Milano Keenan, James A. Wynn Jr.